Eastern Dist.
*April*, 1839.

Ellis
*vs.*
Prevost et al.

13L 230
45 407
13L 230
46 345
13 230
109 654
13 230
112 789
112 795
13 230
116 569
13 230
121 413

ELLIS *vs.* PREVOST ET AL.

APPEAL FROM THE COURT OF THE SECOND JUDICIAL DISTRICT, FOR THE PARISH OF TERREBONNE, THE JUDGE OF THE FOURTH PRESIDING.

No physical act, in taking possession, is necessary under a sale by notarial act. The intention of the purchaser, which the law presumes, coupled with the power which the act of sale gives, vests the possession in him. The *right* is taken for the fact, and the buyer is seized of the thing corporally by the execution of the title.

There is but one kind of possession known to the law, which commences by the corporal apprehension of the thing, or the signing of the title which transfers it; and continues, whether or not the possessor actually occupies and detains the thing, until he is disturbed in fact or in law.

The Louisiana Code contains definitions, and points of doctrine, as well as positive legislation; and whenever there is any inconsistency in its provisions, the court will disregard the doctrine, and consider the definitions modified by the clear meaning of the positive enactments.

So, all possessors, who have had possession quietly and without interruption, by virtue of one of the titles prescribed in the 47th article of the Code of Practice, for more than one year, previous to being disturbed, can maintain a possessory action; and the possession of less than one year is sufficient, in case of eviction by force or fraud.

This is a possessory action. The plaintiff alleges he is the owner of a tract of land lying and fronting on both sides of the bayou Caillon, in the parish of Terrebonne, containing one thousand eight hundred and ninety-three superficial arpents, more or less, with specific boundaries which he sets out; and which he acquired by purchase from John Hutchins, by notarial act, passed on the 28th June, 1836. That this tract is part of a larger one, confirmed by congress, in the name of Charles Jumonville Devillier, under whom the vendor of the plaintiff in this case held, by a title translative of property.

The plaintiff further shows, that his vendor, and those under whom he held, had the actual possession of this tract of land, and that, in virtue of his purchase, he became the legal possessor thereof, and continued to possess the same until some time in the year 1837, when Ursin Prevost, and

others, disturbed him, by making forcible opposition to the construction of new works, improvements, etc., which he was attempting to make and put thereon, and that they still continue their forcible opposition, without any legal title or pretensions to the right of possession of said land, to his damage five thousand dollars. He prays judgment, decreeing him the possession of his land, and quieting him therein, and for his damages.

The defendants pleaded a general denial, and alleged possession in themselves, and through their ancestor from whom they derive title, since the year 1790; and that they have been in the peaceable, open, and uninterrupted possession of the premises, for more than a year prior to instituting this suit. They set up title by inheritance, and plead the prescription of ten, twenty, and thirty years, as owners and possessors in good faith; and pray to be quieted in their title and possession, and that this suit be dismissed.

Upon these pleadings and issues, the parties went to trial, and the cause was submitted to a jury.

In the progress of the trial, the plaintiff offered to produce his title to the land in controversy, in evidence, which was objected to by the counsel of the defendants, on the ground that in an action purely possessory, titles could not be admitted as evidence, either for the purpose of showing the extent of the claim, or of connecting the plaintiff's possession with that of his author; unless it be first shown that the plaintiff had actual possession of some portion of the land in dispute, and that the extent only of that possession was in dispute. The court admitted the title in evidence, to show the extent of the plaintiff's possession. The defendants took their bill of exceptions.

On the whole evidence of the case, after the explanations and arguments of counsel, the jury returned a verdict for the defendants. From judgment rendered thereon, the plaintiff appealed.

*Miles Taylor*, for the plaintiff. 1. The vendor of plaintiff had the real and actual possession of the land in question, as

owner, from the year ——, until he transferred the possession to the plaintiff. *Louisiana Code*, 3389, 3391, 3401, 3405, 3406, 3400. 7 *Martin, N. S.*, 122.

2. In virtue of the transfer to *him*, the plaintiff took the place of his vendor, and succeeded to his possession; and, as the legal possessor, is now entitled to be sustained in the possession of the entire tract of land, and to be quieted therein. *Louisiana Code*, 3522, *number* 29, 3460, 3417, *number* 2.

3. The defendants acknowledged an owner, and could not acquire the legal possession of the land, or of any part of it. *Louisiana Code*, 3404, 3409, 3456. *Starkie's Evidence, volume* 2, *pages* 25 *and* 26. *Louisiana Code*, 2076, 2109, 2112, 3517. *Napoleon Code*, 2249. 2 *Troplong, number* 628.

4. If the defendants have a right to the possession of any part of the land, then their right cannot extend beyond that possessed by enclosures, for more than one year before the institution of the plaintiff's action. *Louisiana Code*, 3417, *number* 2. *Code of Practice*, 49. 9 *Martin's Reports*, 174.

*Roman* and *Beatty*, for the defendants.

*Rost, J.*, delivered the opinion of the court.

This is a possessory action. The defendants have pleaded the general issue, and the possession of one year as owners. The case was tried by a jury, who gave a verdict in favor of the defendants, and after an unsuccessful attempt to obtain a new trial, the plaintiff appealed.

The plaintiff claims possession of the land, under a sale by notarial act, made to him in 1836, by a person who himself purchased the land in 1829, and who since occupied and cultivated a part of it, for more than one year. The plaintiff has never resided upon the land, and has abandoned the improvement made by his vendor. The defendants have occupied and cultivated, for several years, an inconsiderable part of the land in controversy, but they show no possession according to metes and bounds of that which is unenclosed, and some of the witnesses say, that the ancestor to whose possession they have succeeded, acknowledged to them that

the land belonged to Jumonville Devillier, under whose conveyance the plaintiff claims possession and holds title. A much greater number of witnesses state, that the defendants' ancestor, and themselves, possessed as owners. The plaintiff has made the following points in this court:

1. That he has the right to join his possession to that of his author, and that he is in actual possession since 1829.

2. That the defendants never could acquire possession, because their ancestor did not possess as owner.

3. That if they are entitled to the possession of any part, it is only of that which is enclosed.

The defendants answer, that the plaintiff has no capacity to complain of the judgment, because he had no right of action originally; his being a mere civil possession, insufficient to maintain an action under the 49th article of the Code of Practice. This ground of defence must be first considered, for if it should be maintained, it would put an end to the case.

The 49th article of the Code of Practice provides, that in order that the possessor of real estate, or of a slave, or one who claims a right to which such estate may be subjected, may be entitled to bring a possessory action, it is required—

1st. That he should have had the real and actual possession of the property, at the instant when the disturbance occurred. *A mere civil or legal possession* is not sufficient.

2d. That he should have had that possession for more than one year before the disturbance, quietly and without interruption.

The distinction between civil and natural possession, has been one of the cardinal uncertainties of the jurisprudence of modern times, and this arose from the fact, that it was peculiar to the Roman law, and that with us it is a distinction without a difference. By the law of the twelve tables, the Roman citizen who had possessed lands during two years, and moveables during one year, became the irrevocable owner of them, by a mode of acquisition called in the language of the law *usu captio*. Civil possession, was that which united all the requisites of the law, for that mode of

acquiring property; and it was so named, on account of the peculiar effects which the civil or national law, emanating from the twelve tables, attributed to it. All other possessions were held to be of an inferior degree, and were called, in contra-distinction, natural. The *usu captio* was not retained in the institutions of modern nations, but the commentators of their laws preserved the verbal distinction, after the foundation upon which it rested had ceased to exist, and created thereby great confusion and uncertainty; almost each of them adopted a different definition, and drew from them different and adverse doctrines.

The jurists who prepared our codes, to make assurance doubly sure, have made the legislature give us two definitions of civil possession, instead of one, and those two definitions are contradictory, and alike inconsistent with the textual dispositions of our laws on the subject of possession.

Article 3392 of the Louisiana Code, defines civil possession to be, when a person ceases to reside in the house or on the land which he occupied, but without intending to abandon the possession. Article 3394 says, on the contrary, that civil possession is the detention of a thing by virtue of a just title, and under the conviction of possessing as owner.

To which of these two definitions does the 49th article of the Code of Practice refer? If to the last, it takes away the possessory action, instead of giving it; it is sufficient to have a good title, and to possess as owner under it, in order to be deprived of that right of action, even against a trespasser. If to the first, it leads to contradictions equally palpable, and to absurdities equally glaring. Admit that the possessor must have actually occupied and detained, without intermission, the estate, slave, or real right, during more than one year before the disturbance, and what follows? A person owns a tract of wood land, upon which, from the nature of the property, the only act of possession he can in most instances do, is the payment of the taxes; how is he to detain and occupy it? Must he pitch a tent, and remain upon it a year and a day, without intermission, before his right of action accrues? A slave absconds for a short time; does his master lose thereby

his right of action against a person in whose possession he may subsequently be found?

A man has a right of passage upon another's estate, which he may not have occasion to use more than once in many years; is it necessary that he should have been actually using it for more than a year, before he can be heard?

We cannot admit as sound, a doctrine which leads to such consequences. The acts by which possession is evidenced, vary according to the nature and situation of the thing possessed, but possession itself is all of the same nature, and the general context of our laws does not justify the doctrinal division of it, into natural and civil. Article 3389, defines possession to be the detention or enjoyment of a thing which we hold or exercise *by ourselves or by another.* This embraces all sorts of possession, the absolute as well as the precarious; the just as well as the unjust; the civil as well as the natural. Article 2452 says, that tradition, or delivery, is the transferring of things sold into the power and *possession* of the buyer; and article 2455 provides, that the law considers the tradition and delivery of immoveables, as always accompanying the public act which transfers the property. Every obstacle which the seller afterwards interposes, to prevent the corporal possession of the buyer, is considered *as a trespass.*

No physical act in taking possession, is necessary under a sale by notarial act. The intention of the purchaser, which the law presumes, coupled with the power which the act of sale gives, vests the possession in him. The *right* is taken for the fact, and the buyer is seized of the thing corporally by the execution of the title.

No physical act, in taking possession under a sale by notarial act, is necessary. The intention of the purchaser, which the law presumes, coupled with the power which the act of sale gives, vests the possession in him. The right is taken for the fact, and he is seized of the thing corporally. Article 3405 goes on to provide, that when a person has once acquired corporal possession, the intention which he has of possessing, suffices to preserve it in him, although he may have ceased to have the thing in actual custody.

Article 3406 further says, that this intention of retaining possession is always supposed, where a contrary intention does not appear decidedly; so that although a person may have abandoned the cultivation of his estate, he shall not, therefore, be presumed to have abandoned the possession, but shall be presumed, on the contrary, to have the intention of retaining it, and shall retain it in fact.

Article 3407, says, that a negative intention suffices. That is, it suffices that the positive intention which the party had, in acquiring the possession, shall not have been revoked by a contrary intention; for so long as the revocation does not take place, the possessor is supposed always to retain his first intention, unless a third person has usurped or taken from him the possession, or he has failed to do any act showing his intention to possess for ten years.

Article 3468, says, that even after that time, vestiges of works, and *ruins*, are sufficient to preserve the possession, and to enable the possessor to prescribe under it. This article speaks of civil possession, but the designation is merely verbal.

There is but one kind of possession known to the law, which commences by the corporal apprehension of the thing, or the signing of the title which transfers it; and continues, whether or not the possessor actually occupies and detains the thing, until he is disturbed in fact or in law.

The foregoing provisions recognize but one kind of possession; *it commences* by the corporal apprehension of the thing, or the signing of the title which transfers it, and continues, as it commenced, whether or not the possessor actually occupies and detains the thing, until he is disturbed, in fact or in law, or until ten years have elapsed without his doing any act of possession.

Article 3417, places among the rights common to all possessors, the right of action, which every person who has been in possession for a year has, against the person disturbing him, either to be maintained in his possession or to be restored to it, in case of eviction, either by force or otherwise; and article 3419 expressly provides, that the only way in which that right can be lost is by leaving the trespasser in possession for one year.

Here there is a right of action given for all possessions alike, when they have lasted one year, and are not precarious, in direct opposition to the 49th article of the Code of Practice. One of these laws must yield, and we find no difficulty in saying which is to prevail. The court cannot be ignorant of the mode in which our codes were prepared and became laws. They were written by lawyers, who mixed with the positive legislation, [illegible] definitions seldom accurate, and points of *doctrine* always unnecessary. The legislature modified and changed many of the provisions

The Louisiana Code contains definitions and points of doctrine, as well as positive legislation; and whenever there is any inconsistency in its provisions, the court will disregard the doctrine, and consider the definitions modified by the clear meaning of the positive enactments.

So, all possessors, who have had possession quietly and without interruption, by virtue of one of the titles prescribed in the 47th article of the Code of Practice, for more than one year previous to being disturbed, can maintain a possessory action; and the possession of less than one year is sufficient, in case of eviction by force or fraud.

relating to the positive legislation, but adopted the definitions and abstract doctrine, without material alteration; from this circumstance, as well as from the inherent difficulty of the subject, the positive provisions of our code are often at variance with the theoretical part, which was intended to elucidate them; and whenever that occurs, we deem it a sound rule of interpretation, to disregard the doctrine, and consider the definitions modified by the clear intent of the positive enactments. We are, therefore, of opinion, that the classification of possession into natural and civil, carries with it no legal effects. That all possessors, who have had possession quietly and without interruption, by virtue of one of the titles prescribed in the article 47, of the Code of Practice, for more than one year previous to their being disturbed, may maintain a possessory action, and that the possession of less than one year is sufficient, if they have been evicted by force or by fraud. In this instance, besides, the right to maintain a possessory action is given to all possessors, by the Louisiana Code. The Code of Practice was framed exclusively with a view to judicial proceedings, and its provisions on the subject of general laws do not necessarily repeal those of the Louisiana Code, that are contrary to or inconsistent with them.

The plaintiff's vendor had capacity to maintain the possessory action. The plaintiff became seized of the possession by the execution of the act of transfer, and for all useful purposes, he has the right to add the possession of his author to his own. It is true, that no act of possession is shown to have been done by him at the beginning, or since; but as ten years have not elapsed since the actual possession of his author ceased, the possession has continued, under the article 3407, above referred to. We are of opinion that the possession of the plaintiff was sufficient to enable him to maintain his action.

With respect to the allegation that the defendants' ancestor acknowledged an owner, and that the defendants cannot, on that account, have acquired the possession, the evidence is contradictory, and it is not shown how far her admission could prejudice all the defendants. There is no doubt

that if she took possession of the land, knowing and believing it to belong to Jumonville, she did not possess as owner, and those claiming under her could not maintain a possessory action. The defendants have not shown that they possessed by virtue of a title, or under any fixed boundaries; but as they appear to have been a long time upon the land, we are unwilling to pass upon their rights in the present situation of the case. Justice appears to us to require that it should be remanded for a new trial.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided, annulled and reversed, the verdict set aside, and the case remanded for a new trial, the defendants and appellees paying the costs of this appeal.