## ELLIS vs. PREVOST ET AL.

EASTERN DIS.
*July*, 1841.

ELLIS
vs.
PREVOST ET AL.

19L 251
45 126

19L 251
47 405

19L 251
52 198

19 251
113 403

19 251
115 927

APPEAL FROM THE COURT OF THE SECOND DISTRICT, FOR THE PARISH OF TERREBONNE, THE JUDGE OF THE FOURTH DISTRICT PRESIDING.

In a possessory action, the civil possession of the plaintiff, preceded by an actual and corporal detention of the thing, will suffice, as it allows him the benefit of the previous corporal possession of his author.

The court do not recognize the doctrine, that there is but one kind of possession, and that civil possession will suffice in all cases of possessory actions.

Possession is acquired by the actual and corporal detention of the property; this is *natural*, or possession in fact; and it is preserved and maintained by the mere will or intention to possess, and this is civil possession, or possession in right.

So where a person is disturbed in his possession, he has the right, within a year, and by virtue of his civil possession, founded on his previous corporal and actual possession, to institute the possessory action to recover it.

The person claiming by possession alone, without showing any title, must show an adverse possession by inclosures, and his claim will not extend beyond.

This is a possessory action, to recover the possession of a tract of land on bayou Grand Caillou, in the parish of Terrebonne. The facts of the case are fully stated in a former report and judgment of this court. *See* 13 *La. Reports*, 230.

The cause was remanded for a new trial, and again submitted to a jury on the same evidence. There was a verdict and judgment for the defendants, and the plaintiff appealed.

*Miles Taylor*, for the plaintiff and appellant.

*Ilsley & Nicholls*, for the appellees.

*Simon, J.* delivered the opinion of the court.

This case was once before this court, and was remanded for a new trial. The judgment then appealed from had been rendered in favor of the defendants, and on the second trial before the court below, the jury having again found a verdict for the said defendants, the plaintiff, without attempting to obtain a new trial, brought up the present appeal.

The facts of this case, so far as it was then necessary to review them, are perhaps sufficiently stated in the report there-

EASTERN DIS.
July, 1841.

ELLIS
vs.
PREVOST ET AL.

of, 13 *La. Rep.*, 230; but as no additional evidence was produced by either of the parties on the second trial in the lower court, and as their rights stand now before us on the same footing and in the same situation as they were when first submitted to the consideration of this court, and present in some measure the same questions; we shall first proceed to re-examine in substance the extent and nature of the evidence, as by them originally adduced in support of their respective pretensions.

The record shows, that on the 28th of June, 1836, plaintiff purchased from one John Hutchings, by a notarial act, a tract of land, containing thirty-six arpents in front, by forty in depth, on the east side of bayou Grand Caillou, and eleven arpents and one-third in front, by forty in depth on the west side of the said bayou; and that Hutchings had acquired the same from P. S. Cocke, by an act of sale executed on the 6th of February, 1829. That in the years 1829 or 1830, Hutchings took possession of the tract as owner, and put an overseer and seven hands upon it, who lived on and cultivated the place for about twenty-two months, built some cabins, girdled the trees on about one hundred and fifty arpents on the east side, raised a crop on said land, nearly opposite where Madame Prevost then and now lives, and that two individuals also cultivated the said land at different times by the permission of Hutchings. The plaintiff never resided there, and after his purchase, he abandoned the improvements made by his vendor. It is also established, that the defendants and their ancestors resided for a long time on the west side of the bayou, and that they occupied and cultivated at different periods an inconsiderable part of the land in controversy on both sides; it is not shown however, that the portions thus cultivated and which were unenclosed, were ever possessed by metes and bounds, but there is proof resulting from the testimony of the witnesses and from the plat returned by the surveyor, that their enclosures around the house on the west side have existed for a long time, and contain a small tract of four arpents in front, by two arpents and a half in depth, which is the spot which the defendants and

their father have actually occupied for a certain number of years before the institution of this suit. The evidence further shows, that about eighteen months previous to the first trial of this suit, (in March, 1838; the suit was brought in February, 1837,) two persons named Champagne and Daspit, came to reside on the land on the east side, with Madame Prevost's permission; the spot by them occupied is shown on the plat to be five arpents in front, by two and a half in depth.

Under the legal principles established in the former decision of this cause, which however we are not ready to adopt to the same extent, it is clear, that the plaintiff had a right to institute an action of possession against the defendants by virtue of his civil possession, based on the previous actual and corporeal possession of his vendor. This doctrine, so far as it requires the civil possession to be preceded by an actual and corporeal detention of the thing, and as it allows to the plaintiff the benefit of the previous corporeal possession of his author, appears to us to be correct, and we are not disposed to controvert it; but we cannot accede to the proposition, that our laws recognize but one kind of possession, and that a civil possession will suffice in all cases. We are aware, that the distinction between natural and civil possessions is peculiar to the Roman law, and among the French commentators of the highest authority on the Napoleon Code, there are several who consider it as having no sense or direct meaning. *Troplong, prescription, No.* 239, says: *Ces appellations de possession civile et de possession naturelle sont restées si vagues pour les modernes, que peut-être aujourd'hui encore l'on est indécis sur leur véritable sens.* But we are not able to say, that with us it is *a distinction without a difference:* it is evident from the different provisions contained in our system of legislation, that our laws, on this subject, too clear and too explicit to be disregarded, recognize two species of possession, natural and civil: natural possession, which may be called possession in fact, is, when a man detains a thing corporally, as by occupying a house, cultivating a field; and civil possession, or pos-

*In a possessory action, the civil possession of the plaintiff, preceded by an actual and corporeal detention of the thing, will suffice, as it allows him the benefit of the previous corporeal possession of his author.*

*The court do not recognize the doctrine, that there is but one kind of possession, and that civil possession will suffice in all cases of possessory actions.*

EASTERN DIS.
July, 1841.

ELLIS
vs.
PREVOST ET AL.

session in right, is, when a person ceases to reside in the house or on the land which he occupied, but without intending to abandon the possession. *La. Code, articles* 3390, 3391, 3392. Another difference is established by *Pothier, on possession, No.* 55; which, it seems to us, explains clearly the object and meaning of the distinction made under our laws between natural and civil possession; it is this: *Pour acquérir la possession d'une chose, la seule volonté ne suffit pas ; il faut une préhension corporelle de la chose, ou par nous-mêmes, ou par quelqu'un qui l'appréhende pour nous et en notre nom. Au contraire, lorsque* NOUS AVONS ACQUIS LA POSSESSION D'UNE CHOSE, *la seule volonté que nous avons de la posséder suffit pour nous en faire conserver la possession, quoique nous ne détenions pas cette chose corporellement, ni par nous-mêmes, ni par d'autres.* This distinction, therefore, is very obvious: possession is acquired by the actual and corporeal detention of the property; this is the *natural possession* or possession in fact; and it is preserved and maintained by the mere will or intention to possess; and this is the *civil possession* or possession in right. Now, in order to acquire prescription by the possession of ten years, founded on a just title, it is necessary, among other requisites, that the possessor should have held the thing in fact and in right as owner, (*ait possédé la chose naturellement et civilement,*) and yet, to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporeal detention of the thing. *La. Code, art.* 3453. So it is with regard to the right of possession : "*When a person has once acquired possession of a thing, by the corporeal detention of it, the intention which he has of possessing, suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody, either himself or by others.*" *La. Code, articles* 3405, 3406 and 3407. Thus, if after having abandoned the corporeal possession of my house, or the cultivation of my field, I continue to possess it civilly; the intention which I have of possessing, will preserve the possession in me; unless a third person has usurped

*Possession is acquired by the actual and corporeal detention of the property; this is natural, or possession in fact; and it is preserved and maintained by the mere will or intention to possess, and this is civil possession or possession in right.*

or taken such possession from me, during the time required by law, or I have failed to exercise an actual possession for ten years ; and if in the mean time, I am disturbed in my possession, I have the right before the expiration of one year, and by virtue of my civil possession, founded on my previous and anterior corporeal and actual possession of the property, to institute a possessory action to recover it.

This is undoubtedly the meaning of the *art.* 49 of the Code of Practice, which must be construed in relation to the articles of the Louisiana Code on the subject of possession ; this article says : " In order that the possessor may be entitled to bring a possessory action, it is required : 1st, that he should have had the real and actual possession of the property, *at the instant when the disturbance occurred:* a mere civil or legal possession is not sufficient." Now, we understand the expressions, *real and actual possession*, contained in this law, as used in contradistinction with the possession which is purely civil and legal, that is to say : with the possession, which is entirely devoid of the quality of having its source in or being derived from a previous actual and corporeal one; such possession is not sufficient ; but when it has been preceded by the corporeal enjoyment of the thing, and the possessor has not ceased to exercise such enjoyment for ten years, the actual possession previously acquired is preserved and maintained, and it continues in the same manner and with the same effect, as if the thing had always been actually and corporally possessed. *Pothier, on possession, p.* 314, *No.* 27, says : *La possession, lorsqu'elle a été une fois acquise, se conserve plus facilement qu'elle ne s'acquièrt ; car* 1o.· *nous pouvons rétenir la possession d'une chose sans que nous la tenions, et sans qu'aucun autre la tienne en notre nom. Par. éxemple: lorsque le propriétaire d'une maison qui y loge ordinairement, s'en va passer quelque tems ailleurs avec son domestique, sans laisser personne dans cette maison, il ne laisse pas d'en conserver la possession.*"

It is clear, therefore, that if the *article* 49 of the Code of Practice was to be construed strictly and according to its literal

Eastern Dis.
July, 1841.

ELLIS
vs.
PREVOST ET AL.

So where a person is disturbed in his possession, he has the right, within a year, and by virtue of his civil possession, founded on his previous corporeal and actual possession, to institute the possessory action to recover it.

EASTERN DIS. meaning, there would follow the absurdity, that if a person
July, 1841. was to absent himself temporarily, and leave his house unoccu-
ELLIS pied for a certain lapse of time, he could not on his return bring
vs.
PREVOST ET AL. a possessory action against an intruder, who would have taken
possession of it during his absence, and would be obliged to
resort to the petitory action ; his adversary would always suc-
cessfully oppose to him the plea in the words of the Code of
Practice : that he was not in the real and actual possession of
the house, *at the instant when the disturbance occurred*. This
cannot have been the intention of the law giver ; and such an
interpretation is too absurd, to be for a moment countenanced
at our hands. We must consequently conclude, that the pos-
session acquired by the plaintiff's vendor, which possession is
shown to have existed really and actually for more than one
year, according to the extent and under the limits exhibited by
the acts of sale, ought to enure to the benefit of said plaintiff ;
and that having not failed to exercise the said natural posses-
sion for ten years, the same was preserved in his favor by the
civil possession, and was sufficient to entitle him to bring and
maintain the present action.

With this view of the question, the plaintiff, under the evi-
dence, would have a right to recover the whole tract, unless he
is shown to have suffered a year to elapse after the disturbance,
without bringing his possessory action, and unless the defend-
ants have succeeded in establishing an adverse possession to it
or to any part thereof during the period prescribed by law.
*C. of Pr.*, art. 59 ; *La. Code*, art. 3419. It is true, that the
defendants have, at various times, occupied and cultivated, for
a certain number of years, different inconsiderable parts of the
land in dispute ; but they have shown no possession according
to metes and bounds of the land which was unenclosed, and
the testimony is so vague and uncertain as to the extent of the
several spots, which they have successively occupied, and of
the limits of the fields which they may have cultivated, that it
would be impossible to ascertain and indicate the fractions of
the plaintiff's land, upon which they may have exercised their

alleged acts of possession. " On ne peut pas posséder la par-
tie incertaine d'une chose ;" Troplong, prescription, Vol. 1,
No. 250. In the case of Prevost's Heirs vs. Johnson, 9 M.
R., 123, this court held, that when a person claims by posses-
sion alone, without showing any title, he must show an adverse
possession by enclosures, and his claim will not extend beyond
such enclosures. In the case of Bernard vs. Shaw, 1 Martin,
N. S., 480, the facts proved established the plaintiff's right of
possession, (as in this case,) to the whole body of land sued
for; the defendant, however, gave in evidence his possession
and cultivation of a field of fifteen arpents, but neither the
pleadings, nor the evidence ascertained the particular spot
where this possession was exercised ; and the defendant's pre-
tensions were disregarded. In the case of McDonough vs.
Childress et al., 15 La. Rep., 560, we said, that it was neces-
sary, in an action of possession, not only to show acts of limit-
ed and restricted possession, but also to establish by legal evi-
dence the extent and full limits of the property so possessed.
These principles are clearly applicable to the present case;
and as the defendants have not shown their adverse possession
to extend, by metes and bounds, with any degree of certainty,
beyond the enclosures of the spot shown on the surveyor's
map, to contain four arpents in front, by two arpents and a half
in depth, and as the evidence fully establishes their actual and
continued possession for a number of years to the quantity of
arpents of land comprised within their said enclosures, we are
of opinion, that the said defendants should be maintained in
their said possession of the said tract of four arpents in front,
by two and a half in depth, on the west side of the bayou
Grand Caillou ; and that the plaintiff should recover the pos-
session of the balance of the whole tract to the extent and
limits described in his petition.

With regard to the parcel of land possessed by Champagne
and Daspit, with the permission of the defendants, on the east
side of the bayou ; it is clear from the evidence, that they had
not been in possession of it for one year, at the time of the in-

EASTERN DIS.
July, 1841.

stitution of this suit, and that consequently, the defendants cannot derive any benefit from their said possession.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and proceeding to give such judgment, as, in our opinion, ought to have been rendered in the lower court; it is ordered, adjudged and decreed, that the plaintiff and appellant do recover and be maintained in the possession of the tract of land described in his petition; except, however, of that portion of the said tract on the west side of the bayou Grand Caillou, shown in the surveyor's map to contain four arpents in front, by two arpents and a half in depth; and that the defendants and appellees be maintained in their possession of the said small tract according to the metes and bounds designated in the said surveyor's map; the costs in both courts to be borne by the said defendants.