The plaintiff in this case alleges that the defendant has disturbed her possession of Lot 163 Square 17 of Darrow in Ascension Parish; that she and her authors in title have been in possession of said property for more than thirty years, and she prayed for a temporary restraining order to issue against the defendant restraining and enjoining him from interfering with her possession of said property, and finally for a writ of injunction to issue against said defendant. The restraining order issued, and defendant answered denying ownership and possession of the property as claimed by the plaintiff. He admitted that he had gone on the property and cut grass thereon and had exercised acts of ownership over the property by reason of a certain Homestead Entry, dated June 17, 1943, issued by the Register of the State Land office. He alleged that the property was adjudicated to the State in 1932 for the unpaid taxes of 1931, under an assessment in the name of the then owner, Eliska White, who is now deceased; that the property was never redeemed by the deceased or her heirs; that plaintiff has not been and could not be in possession of the property as owner as it had been adjudicated to the State and thereafter possession was in the State, and, in any event, she could not possess as owner as she is only an heir of Eliska White for a very small undivided interest in the property.
The trial judge on a hearing dissolved the restraining order, and on a trial of the merits dismissed plaintiff's suit for lack of sufficient possession to support a possessory action. From this judgment, plaintiff has appealed.
The record shows that the property was adjudicated to the State for taxes in 1932 under an assessment in the name of Eliska White who died in 1933, leaving a husband and several collateral heirs. Her surviving husband occupied the small house on the lot until he died about 1938. After he died, one of the collateral heirs of Eliska White, Walter Robinson permitted one Felix Dorsey to live in the house, the latter not being an heir of the deceased owner. Walter Robinson died in 1941, but it seems that Dorsey continued to occupy the property until November, 1942, when plaintiff claims that she took possession as one of the collateral heirs by locking up the house and nailing a bar across the front door. She states that she plowed around the fig and peach trees on the lot in February, 1943, and got water from a rain water tank on the property for her use; that she lived near the lot, and in the latter part of February, 1943, let her daughter live in the one room house on the lot until May of that year, and after her daughter moved *Page 653 
out, she stored potatoes and rice in the house. This was the situation as to her possession of the property when this suit was filed in August, 1943, to protect her possession.
The defendant made a homestead entry of the lot in June, 1943, and undertook to take possession of the property under that entry, whereupon this suit followed. As this is a possessory action, it is obvious that the question of title is not involved, and we are not called upon to determine the validity, vel non, of the tax adjudication nor the rights of the defendant under the homestead entry. The sole question is whether or not plaintiff has shown the kind and nature of possession of this property to entitle her to be maintained in that possession by the injunctive process as provided for by Article 298, paragraph 5 of the Code of Practice.
The contention made by the defendant that the adjudication of the property to the State for taxes in 1932 had the effect of placing the possession of the property in the State thereby preventing any one from possessing adversely to the State is without merit. A tax title does not, ipso facto, deprive the tax debtor of the actual possession of the property sold at tax sale, but such sale only gives the tax purchaser a right to be put in possession of the property under the tax deed in the manner provided by law. The State is no different in this respect from an individual adjudicatee. Handlin v. H. Weston Lumber Company, Ltd., 47 La.Ann. 401, 16 So. 955.
There is nothing to show that the State ever took any steps to get actual possession of the property prior to the homestead entry of the defendant in June, 1943. The case of Ward et al. v. South Coast Corporation et al., 198 La. 433, 3 So.2d 689, cited in support of defendant's contention, is not in point. In that case the court held that an adjudication of property to the State for unpaid taxes had the effect of interrupting the adverse possession relied on under pleas of ten and thirty years prescription in order to acquire ownership; that, as prescription cannot run against the State, so long as the title to the property is in the State, a possessor cannot acquire title by prescription against the State. The question in the present case is not whether or not plaintiff or her authors in title could acquire a title against the State by prescription, but the question is whether or not she had such actual possession of the property as would entitle her to protect that possession by the injunctive process under the article of the Code of Practice above mentioned.
Plaintiff does not claim to have had possession of the property prior to November, 1942, and as this suit was filed less than a year from that time, it is clear that she has not had possession for the necessary period of more than a year, unless she is able to tack onto her possession that of Felix Dorsey. In her petition she does not claim to possess for her coheirs. At best, Dorsey was in possession of the property by sufferance after the death of Walter Robinson in 1941. He paid no rent, and so far as the record shows, plaintiff had no contractual relations with Dorsey whatever. He did not undertake by contract or otherwise to transfer his possession to the plaintiff, and he did not sustain any relationship to her by reason of which his possession was transmitted to her by operation of law.
It is true that a plaintiff in a possessory action can add to his possession that of his author in title in order to make up the required length of time for maintaining a possessory action, as we held in the recent case of Annison v. Womack, 200 So. 663, but there must be some transfer or transmission of the possession by the former possessor either by some contractual relationship or by operation of law whereby the plaintiff succeeds to the rights of the former possessor. As plaintiff possessed for herself only, the nature and extent of her possession must be determined from her own acts and from the acts of possession of those directly under her authority.
In the case of Barker v. City of New Orleans, 159 La. 325,105 So. 359, in stating the kind of possession necessary for maintaining the possessory action the court said: "It is elementary and codal law that before a plaintiff can succeed in a possessory action, it must appear that he has had the real and actual possession of the property at the instant the disturbance of which he complains takes place, and this possession should have existed without interruption by virtue of one of the titles prescribed in article 47 of the Code of Practice for more than a year previous to the disturbance complained of." See also Bonnabel v. Police Jury for Jefferson Parish, La.App.,3 So.2d 183. *Page 654 
Whatever possession Felix Dorsey had of the property was interrupted when he vacated the property and the plaintiff undertook to take possession of it in her own right within less than a year from the time she filed this suit. It is therefore unnecessary to discuss the question of whether or not her possession was interrupted for two or three months as was held by the trial judge.
For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby affirmed at the cost of appellant in both courts.
LE BLANC, J., recused.